Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Barbara Dodds*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Barbara Dodds,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Honeywell International, Inc. Disability Plan; Honeywell International, Inc.; Life Insurance Company of North America<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

　　　　Now comes the Plaintiff Barbara Dodds (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

　　　　1.　　Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Honeywell International, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(I) which was self insured and short term disability ("STD") benefits were paid from the regular pay cycle according to the payroll schedule that would otherwise apply to Plaintiff if she was Actively at Work. Upon information and belief, the name of the entity is the Honeywell International, Inc. Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.

Upon information and belief, the Company or Plan may have delegated responsibility for the Plan's claim administration to Life Insurance Company of North America (hereinafter referred to as "LINA"). Plaintiff believes that as it relates to her claim, LINA functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

4. Upon information and belief, the Company or Plan may have also operated under a structural conflict of interest in that they may have assumed dual roles as the claims administrator and payor of benefits; *to wit*, if one of the aforementioned entities approved Plaintiff's claim it was also liable for payment of benefits.[1]

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of

2

The Company or Plan's conflict of interest may have also led it to retain a company such as LINA to be the claims administrator in that the Company or Plan funded the benefits and would directly benefit financially if LINA administered the Plan's claims in a parsimonious manner.  LINA's conflict of interest manifested in that if it maintained a parsimonious approach to managing the Plan's claims it would benefit by being viewed favorably by the Company or Plan who would save money by incurring a lower claims experience with fewer monetary contributions to pay the Plan's benefits.

5. The Company, LINA and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

6. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

7. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7).  Plaintiff seeks STD benefits from the Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled, including but not limited to, a waiver of any premiums due on a life insurance policy which may insure her, company provided health insurance benefits (coverage), company provided retirement benefits, pension and/or 401k contributions.

---

discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

1    8.	After working for the Company as a loyal employee, Plaintiff became
2 disabled due to serious medical conditions and was unable to work in her designated
3 occupation as a Senior Contract Representative on or about September 2, 2013.

4    9.	Following her disability, Plaintiff applied for STD benefits under the relevant
5 Plan.  The relevant Plan provides the following definition of disability:

> Disability means a Total Disability or Partial Disability.
>
> "Total Disability means that an Eligible Employee is prevented by:
>
> - Accidental bodily injury;
> - Sickness;
> - Mental illness;
> - Substance abuse; or
> - Pregnancy
>
> from performing the essential functions of his own occupation or any job the Employer offers him, other than alternative work duty while the Eligible Employee has a Partial Disability, for which he is reasonably qualified by reason of his education, training, or experience.

14   10.	In support of her claim for STD benefits, Plaintiff submitted medical records
15 to LINA from her treating physicians which supported her allegation she met the Plan's
16 relevant definition of disability.

17   11.	As part of its review of Plaintiff's claim for STD benefits, LINA obtained
18 medical records only "paper reviews" from its own Staff Medical Director and Nurse Case
19 Manager.  Upon information and belief, Plaintiff believes these individuals are biased due to
20 the fact they are LINA employees and have an incentive to protect their employment by
21 providing paper reviews which selectively review or ignore evidence, as Plaintiff believes
22 occurred in her claim in order to provide opinions and report(s) favorable to LINA and
23 which supported the denial of Plaintiff's claim.

4

12. Plaintiff questions the independence, impartiality and bias of LINA's own employees to fully and fairly review her claim and believes their opinions are adversarial because of their conflict of interest as LINA employees. Plaintiff alleges LINA's numerous conflicts of interest are a motivating factor in why it referred her claim to its own employees for review.

13. LINA informed Plaintiff in a letter dated October 31, 2013 it was denying her STD claim.

14. Plaintiff timely appealed LINA's decision to deny her claim on January 23, 2014 and again submitted to LINA medical documentation from her treating physicians supporting her allegation that she met the relevant definition of disability.

15. In support of her claim for STD benefits, Plaintiff submitted medical, vocational and lay witness evidence demonstrating she met the definition of disability set forth in the relevant Plan.

16. Further supporting her appeal, Plaintiff submitted a narrative letter dated February 12, 2014, and a checklist questionnaire dated February 25, 2014 from her current treating board certified pain management and rehabilitation physician, who confirmed it was his medical opinion Plaintiff has been "unable to perform the material duties of any occupation in the national economy…" since September 2, 2013.

17. Plaintiff also submitted a narrative letter dated January 15, 2014, from her current treating chiropractor, who confirmed "Based upon my current knowledge of this patient, a variety of specific limitations would preclude ability to work."

18. Plaintiff also submitted a Functional Capacity Evaluation report dated December 28, 2013 wherein after an extensive evaluation, a qualified physical therapist

5

1  concluded, "…[Plaintiff] is unable to perform the physical demands of any type of work
2  including SEDENTARY work on a regular and consistent basis" (original emphasis).

3      19.  Further supporting her appeal, Plaintiff submitted a vocational report from a
4  certified vocational expert dated February 14, 2014, who after reviewing Plaintiff's medical
5  evidence and interviewing her concluded, "From a vocational perspective, it is unmistakable
6  that [Plaintiff] fully meets the criteria set forth in Cigna's disability policy.  She is unable to
7  return to any suitable, gainful employment at this time."

8      20.  In addition to the medical records and reports submitted to LINA, Plaintiff
9  submitted two sworn affidavits from her husband and prior co-worker and longtime friend,
10 who both confirmed Plaintiff is unable to work in any occupation and her condition has not
11 improved in any way since her date of disability.

12     21.  As part of its review of Plaintiff's claim, LINA again obtained a medical
13 records only "paper review" from its own Nurse Case Manager.  Plaintiff alleges this
14 individual is also biased as set forth *supra* in this complaint for the same reasons as the other
15 LINA employees who reviewed her claim.

16     22.  Prior to its final denial, LINA never shared with Plaintiff the report authored
17 by the Nurse Case Manager and never engaged Plaintiff or her treating medical providers in
18 a dialogue so she could either respond to his/her report and/or perfect her claim.  LINA's
19 failure to provide Plaintiff with the opportunity to respond to the Nurse Case Manager's
20 report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit
21 case law.

22     23.  LINA informed Plaintiff in a letter dated February 27, 2014 it had made a
23 final decision to deny her claim for short term disability benefits and that she had exhausted
24 her administrative remedies pursuant to ERISA.

25
26

24. Upon information and belief, LINA's February 27, 2014 denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

25. From the time LINA originally evaluated Plaintiff's claim for STD benefits through the present, Plaintiff has remained unable to engage in any occupation due to her medical conditions and resulting limitations.

26. Upon information and belief, LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: failing to have Plaintiff's claim reviewed by a medical professional who is independent and a non-LINA employee, arbitrarily rejecting Plaintiff's reliable evidence, failing to credit and consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability and emphasizing evidence which suggested an opposite conclusion, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments and failing to obtain an Independent Medical Examination when the Plan allowed one and Plaintiff's disabling conditions could not be reasonably or fully evaluated by reviewing only her medical records, failing to consider the side effects Plaintiff's medications would have on her ability to work in her occupation.

27. LINA failed to adequately investigate her claim and failed to engage Plaintiff, her attorney and/or her treating medical professionals in a dialogue during the appeal with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. LINA's failure to adequately investigate the claim and to engage in this dialogue or to obtain

the evidence it believed was important to assist in perfecting the claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

28. In evaluating Plaintiff's claim on appeal, Defendants had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [2]

29. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest and any individual or company who was involved in and/or reviewed Plaintiff's claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced the decision to terminate her benefits.

30. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo* because even if the Court concludes the Plan properly confers discretion to LINA, its unlawful violations of ERISA committed during the review of Plaintiff's claim as referenced herein are so flagrant they justify *de novo* review.

31. As a direct result of LINA's decision to deny Plaintiff's STD claim she has been injured and suffered damages in the form of lost STD benefits in addition to other

---

[2] ERISA sets a special standard of care upon a plan LINA, namely, that LINA "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan. *See* 29 U.S.C. § 1104(a)(1). ERISA simultaneously underscores the particular importance of accurate claims processing by insisting that LINA's "provide a 'full and fair review' of claim denials." *See Firestone*, 489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)). ERISA also supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008).

1 potential employee benefits as referenced *supra*, that she may have been entitled to receive from or through the Plan and/or Company as a result of being found disabled.

32. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

33. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that Plaintiff meets the definition of disability set forth in the Plan and requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled pursuant to the Plan, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 29th day of April, 2014.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
    Scott E. Davis
    Attorney for Plaintiff